# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| WORLD GROUP SECURITIES, INC., | CASE NO. 10-CV-2282-MMA(KSC) |
|---|---|
| Plaintiff, | **ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT** |
| vs. | |
| WILLIAM S. SUGG, | [Doc. No. 54] |
| Defendant. | |

Currently pending before the Court is Plaintiff World Group Securities, Inc.'s ("WGS"),[1] motion for summary judgment. To date, Defendant William Sugg has not filed an opposition to WGS's motion. For the reasons set forth below, the Court **GRANTS** WGS's motion and **ORDERS** that the arbitration filed with FINRA Dispute Resolution, entitled *William S. Sugg v. World Group Securities, Inc. and World Financial Group, Inc.*, Case No. 10-04389, be permanently **ENJOINED** as to World Group Securities, Inc. and Transamerica Financial Advisors, Inc.

## I. BACKGROUND

On August 23, 2010, a third party named Christopher Campbell contacted Defendant, Mr. Sugg, offering to help Mr. Sugg with a loan modification. [Doc. No. 54-3, p.25 (FINRA statement of claim).] Mr. Sugg subsequently met with Mr. Campbell at an office in Brea, California where

---

[1] Although WGS has since merged with and now operates as Transamerica Financial Advisors, this Order will refer to the plaintiff as WGS.

1  Mr. Campbell allegedly represented that he was an employee of WGS/WFG,[2] and showed Mr.
2  Sugg some of WGS/WFG's sales videos. [*Id.* pp.25-26; Doc. No. 8, p.2 (Plaintiff's Opposition to
3  Motion for Preliminary Injunction).] Mr. Sugg then filled out a loan modification application and
4  provided Mr. Campbell with tax returns, banking information, and pay stubs. [Doc. No. 54-3,
5  p.25.] Mr. Campbell informed Mr. Sugg a few weeks later that the application was approved.
6  [*Id.*; Doc. No. 8, p.3.] Mr. Sugg gave Mr. Campbell a cashier's check for $3,500, made out to the
7  Feldman Law Center, which Mr. Sugg believed was WGS/WFG's legal team. [*Id.* pp.12-13 (Sugg
8  Depo).] Several months later, Mr. Sugg discovered the loan modification was not completed as
9  promised. [*Id.* p.25 (FINRA statement of claim).] After Mr. Campbell stopped returning
10 Mr. Sugg's calls, Mr. Sugg contacted WGS/WFG.[3] [*Id.* pp.25-26.] Ultimately, Mr. Sugg was
11 unable to obtain a loan modification and his property was sold in a short sale. [*Id.* p.27.]

12 In September 2010, Mr. Sugg filed a Statement of Claim with the Financial Industry
13 Regulatory Authority ("FINRA")[4] seeking $101,000 in compensation and additional punitive
14 damages. [*Id.*] Mr. Sugg later initiated arbitration proceedings with FINRA against WGS/WFG,
15 entitled *William S. Sugg v. World Group Securities*, *Inc. and World Financial Group*, Case No.
16 10-04389, asserting that WGS/WFG is responsible for the actions of its alleged associate,
17 Campbell, and that WGS/WFG sold services it was not licensed to sell (*i.e.*, loan modifications).
18 [Doc. No. 30, p.2 (Order Denying Defendant's Motion to Dismiss).]

19 On November 4, 2010, WGS filed the current action seeking declaratory and permanent
20 injunctive relief against Mr. Sugg to terminate the FINRA arbitration, as WGS maintains it has no
21 obligation to arbitrate Mr. Sugg's grievances. [Doc. No. 1.] The Court previously granted WGS's
22 motion for a preliminary injunction on January 24, 2011, and ordered the arbitration proceedings
23 "to be stayed and otherwise enjoined as to World Group Securities, Inc., pending further order of

---

[2] World Financial Group (WFG) is a company affiliated with WGS.

[3] Mr. Sugg's email correspondence was with Aegon, the parent company of WGS/WFG.

[4] FINRA operates a dispute resolution forum in the securities industry to assist in the resolution of monetary and business disputes between and among investors, securities firms and individual registered representatives. WGS is a member of FINRA. [Doc. No. 4-3, p.2 (Declaration of Kevin Palmer).]

the Court." [Doc. No. 12.]

Several months later, WGS moved the Court to convene a Rule 26(f) conference, which the Court denied because Mr. Sugg still had not answered WGS's Complaint. [Doc. No. 13.] Soon thereafter, WGS requested that Clerk of Court enter default against Mr. Sugg, which the Clerk entered the next day. [Doc. No. 16.] Mr. Sugg promptly moved the Court to set aside the default. [Doc. No. 19.] The Court granted Mr. Sugg's motion, and ordered Mr. Sugg to respond to the Complaint. [Doc. No. 24.] Instead of filing an answer, Mr. Sugg submitted a response "requesting that the Courts [sic] dismiss this complaint and remove the Preliminary Injuction, thus allowing my FINRA Arbitration Case #10-04389 to move forward." [Doc. No. 26, p.6.] The Court construed Mr. Sugg's filing as a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) and denied the motion, again ordering Mr. Sugg to answer WGS's Complaint. [Doc. No. 30.] Mr. Sugg answered on March 28, 2012, and a discovery plan was set out during a Rule 26(f) planning conference. [Doc. Nos. 36, 45.]

During discovery, on July 5, 2012 WGS propounded on Mr. Sugg a set of nine requests for admissions. [Doc. No. 54-3, p.31 (Plaintiff's Requests for Admission).] Plaintiff's attorney emailed Mr. Sugg on August 21, 2012, warning him that his failure to respond to these requests within the thirty days allowed by Federal Rule of Civil Procedure would mean he would be deemed to have admitted to the requests, and offered Mr. Sugg an extension to August 27, 2012. [*Id.* p.37.] On August 27, 2012, Mr. Sugg emailed Plaintiff's attorney informing her of a recent medical emergency, and Plaintiff's attorney extended the deadline for Mr. Sugg to respond to the requests for admissions to September 6, 2012, warning Mr. Sugg again of the adverse impact of failing to respond to the requests. [*Id.* pp.38, 40.] In Mr. Sugg's deposition taken September 25, 2012, Plaintiff's attorney asked Mr. Sugg if he understood from counsel's emails that his failure to respond to the requests for admissions meant that they were deemed admitted, and Mr. Sugg responded: "[t]hat's what it says." [*Id.* p.19 (Sugg Depo).]

Further, during Mr. Sugg's deposition, he admitted the following: (1) Mr. Sugg agrees that Mr. Campbell is not and has never been an employee or registered representative of WGS; (2) no one from WGS represented to Mr. Sugg that Mr. Campbell was an employee or registered

1 representative of WGS; (3) Mr. Campbell is the only person that gave Mr. Sugg the impression
2 that WGS/WFG was involved in his loan modification; (4) Mr. Campbell never represented that he
3 was a registered representative of WGS, only WFG; (5) Mr. Sugg agrees that WGS has no
4 affiliation with the Feldman Law Center or Lionstar Financial; (6) Mr. Campbell is the only person
5 Mr. Sugg ever talked to about the Feldman Law Group; (7) Mr. Sugg never signed a contract with
6 WGS; (8) Mr. Sugg never signed a document that contained an arbitration provision; (9) Mr. Sugg
7 never purchased securities through WGS; (10) Mr. Sugg never exercised stock options at or
8 through WGS; (11) Mr. Sugg never rolled over his 401(k) to WGS. [*Id.* pp.7-9, 11, 14-17.]

## II. LEGAL STANDARD

A motion for summary judgment should be granted if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). The purpose of summary judgment "is to isolate and dispose of factually unsupported claims or defenses." *Celotex v. Catrett*, 477 U.S. 317, 323-24 (1986). The moving party bears the initial burden of informing the Court of the basis for the motion, and identifying portions of the pleadings, depositions, answers to interrogatories, admissions, or affidavits which demonstrate the absence of a triable issue of material fact. *Id.* at 323. The evidence and all reasonable inferences therefrom must be viewed in the light most favorable to the non-moving party. *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630-31 (9th Cir.1987).

If the moving party meets its initial burden, the burden then shifts to the non-moving party to present specific facts showing that there is a genuine issue of material fact for trial. *Celotex*, 477 U.S. at 324. The opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 588 (1986). When a party fails to properly address another party's assertions of fact, a court may consider these facts as undisputed. Fed. R. Civ. P. 56(e)(2). If the motion and supporting materials, including facts considered undisputed, show the movant is entitled to summary judgment, the Court may grant the motion. Fed. R. Civ. P. 56(e)(3). Summary judgment is not appropriate if the non-moving party presents evidence from which a reasonable jury could

resolve the disputed issue of material fact in his or her favor. *Anderson*, 477 U.S. at 248; *Barlow v. Ground*, 943 F.2d 1132, 1136 (9th Cir.1991). However, "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita Elec. Indus. Co.*, 475 U.S. at 587.

Here, WGS seeks declaratory relief and a permanent injunction. According to well-established principles of equity, a plaintiff must demonstrate:

> (1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction.

*eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006). Having to arbitrate claims in the absence of a clear agreement to do so is contrary to arbitration jurisprudence and constitutes irreparable injury. *See World Grp. Sec. v. Ko*, 2004 U.S. Dist. LEXIS 15726, at *23 (N.D. Cal. Feb. 11, 2004). "To the extent that ensuring that arbitration is not compelled without an agreement to do so reflects a public policy, then the public interest weighs in favor of issuing the injunction." *Id.* at *25.

Courts generally decide the arbitrability of disputes and whether parties must submit a particular dispute to arbitration. *Id.* at *6. A party divests a court of this general ability if the party submits the question of arbitrability to an arbitrator. *Id.* at *7. The Federal Arbitration Act ("FAA") allows a court to stay proceedings in federal district courts when an issue in the proceeding is referable to arbitration, and for orders compelling arbitration when one party fails to comply with an arbitration agreement. *E.E.O.C. v. Waffle House, Inc.*, 534 U.S. 279, 289 (2002). However, the FAA does not require parties to arbitrate when they have not agreed to do so. *Volt Info. Scis., Inc. v. Bd. of Trs.*, 489 U.S. 468, 478 (1989). However, even if parties have not entered an arbitration agreement, they may be compelled to arbitrate under certain circumstances if one party is a member of FINRA. *See* FINRA Code of Arbitration §§ 12200, 12201. FINRA requires members to arbitrate under the Code of Arbitration Procedure for Customer Disputes ("the Code") if:

- Arbitration under the Code is either:
  (1) Required by a written agreement, or
  (2) Requested by the customer;

- The dispute is between a customer and a member or associated person of a member; and
- The dispute arises in connection with the business activities of the member or the associated person, except disputes involving the insurance business activities of a member that is also an insurance company.

*Id.* § 12200. The Code's definition of "customer" reads in its entirety: "a customer shall not include a broker or dealer." *Id.* § 12100(i). Typically, in cases finding that a person qualified as a "customer," the individual who solicited the investments or provided investment advice was a representative or employee of the member company. *See Brookstreet Sec. Corp. v. Bristol Air*, 2002 U.S. Dist. LEXIS 16784, at *23-25 (N.D. Cal. Aug. 5, 2002) (discussing examples of cases holding individuals were "customers").[5]

### III. DISCUSSION

Because Mr. Sugg failed to opposed WGS's motion for summary judgment, the Court accepts all facts presented by WGS's motion as undisputed. Additionally, because Mr. Sugg failed to submit written responses to WGS's request for admissions, even after WGS warned him of the adverse affect of failing to do so, the Court deems that Mr. Sugg has admitted to all nine requests therein. As such, Mr. Sugg has admitted to the following: (1) At the time of the loan modification, Campbell was not an employee, associated person or registered representative of WGS; (2) Mr. Sugg has never purchased any investments, products or services through WGS; (3) Mr. Sugg has never maintained any accounts at WGS; (4) Mr. Sugg has never executed a customer agreement with WGS; (5) WGS's name does not appear in any documents or communications relating to the loan modification; (6) WGS has no contract or affiliation with Lionstar Financial; (7) WGS has no contract or affiliation with the Feldman Law Center; (8) Mr. Sugg is not, and has never been, a customer of WGS. [Doc. No. 54-3, pp.33-34 (Request for Admissions).]

These admissions, taken in conjunction with the concessions Mr. Sugg made during his deposition, render the Court's analysis relatively straightforward. Because Mr. Sugg has requested arbitration with WGS, and because WGS is a member of FINRA, this Court must determine if the the Code requires WGS to arbitrate Mr. Sugg's claims. Although Mr. Sugg wishes to leave the

---

[5] Although *Brookstreet* and the cases discussed therein interpreted language from the National Association of Securities Dealers (NASD) Code of Arbitration, FINRA is the successor to NASD, and has adopted the identical language of the regulations in question.

decision of arbitratability to the FINRA arbitrator, WGS has not submitted to the arbitrator's jurisdiction to determine that issue, and has properly submitted the issue to this Court.

First, as WGS argues, and Mr. Sugg agrees, neither party has executed a written agreement requiring arbitration. Additionally, Mr. Sugg admits he never purchased any investments, products or services from WGS, and his claim rests solely on the failed loan modification initiated by Mr. Campbell. Mr. Sugg explained that no one at WGS attempted to solicit business from him other than Mr. Campbell, and Mr. Sugg now agrees that Mr. Campbell is not, and never was an employee or authorized agent of WGS. Because cases interpreting FINRA's use of the word "customer" generally require the person soliciting the business of the purported customer to be an employee or agent of the FINRA member, Mr. Sugg does not qualify as a "customer" on these facts. Therefore, Mr. Sugg cannot satisfy either of the two alternative requirements of the first prong of section 12200 of the Code and, for the same reason, cannot satisfy the second prong–that the dispute is between a customer and a FINRA member. Furthermore, accepting WGS's declaration as true–that they do not participate in loan modifications in any capacity and do not endorse any company that performs loan modifications–Mr. Sugg's dispute does not arise in connection with any of WGS's business activities and therefore fails to meet the third prong of section 12200 of the Code. As a result, Mr. Sugg has no authority to compel WGS to participate in arbitration for the unilateral actions of Mr. Campbell.

Moreover, because Mr. Sugg wishes to proceed with his FINRA arbitration against WGS and believes an arbitrator should determine the result of this dispute, there is no adequate remedy available to WGS other than an injunction preventing Mr. Sugg from doing precisely that. *See Wells Fargo Bank, N.A. v. Clark*, 2012 U.S. Dist. LEXIS 145145, at *10-11 (D. Or. Oct. 5, 2012) (holding defendant's unwillingness to cease violation of trade secret law, even after suit was filed and a preliminary injunction was issued was sufficient to show the inadequacy of other legal remedies). WGS clearly has an interest in avoiding legally binding arbitration in the absence of an agreement or legal requirement to arbitrate. Mr. Sugg has no legitimate interest in pursuing arbitration proceedings against a company that he concedes he is not a customer of, and the balance of hardships therefore weighs heavily in WGS's favor. The public interest is not disserved

by barring a claimant from doing that which he was never entitled to do. Ultimately, WGS will suffer irreparable harm if forced to endure costly arbitration in absence of an agreement, and additionally will risk an erroneous or default judgment without a permanent injunction. The four factors weigh heavily in favor of permanently enjoining the FINRA arbitration proceeding.

### IV. CONCLUSION

Although the Court certainly sympathizes with Mr. Sugg for his plight, no legal basis exists to compel WGS to arbitrate a dispute that the company never agreed to arbitrate and for which the company was not responsible. For the reasons set forth above, the Court hereby orders as follows:

(i) Plaintiff World Group Securities, Inc.'s motion for summary judgment is **GRANTED**;

(ii) That the arbitration filed with FINRA Dispute Resolution, entitled *William S. Sugg v. World Group Securities, Inc. and World Financial Group, Inc.* Case No. 10-04389 shall be permanently **ENJOINED** as to World Group Securities, Inc. and Transamerica Financial Advisors, Inc.;

(iii) That William S. Sugg is permanently **ENJOINED** from bringing an arbitration action before FINRA Dispute Resolution against World Group Securities, Inc. and Transamerica Financial Advisors, Inc., arising out of the facts surrounding the loan modification discussed herein; and

(iv) That final judgment be entered in favor of World Group Securities, Inc. The Clerk of Court is instructed to terminate the matter.

**IT IS SO ORDERED.**

DATED: February 1, 2013

Hon. Michael M. Anello
United States District Judge